UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO DENNIS CORDOVA,<br><br>Plaintiff,<br><br>v.<br><br>LAKE COUNTY, et al.,<br><br>Defendants. | Case No. 18-cv-00367-JSW<br><br>**ORDER GRANTING LAKE COUNTY'S MOTION FOR SUMMARY JUDGMENT AND DENYING MOTION TO DISMISS AS MOOT AND CONTINUING STATUS CONFERENCE**<br><br>Re: Dkt. Nos. 170, 190 |

Now before the Court for consideration are the motions to dismiss and the second motion for summary judgment filed by Lake County (the "County"). The Court has considered the parties' papers, relevant legal authority, and the record in this case. The Court finds good cause to consider the County's second motion for summary judgment. First, although the Court does not reach this argument, the issue of whether it is immune from suit under the Eleventh Amendment presents a purely legal question. *See Doe v. Regents of the Univ. of Calif.*, 891 F.3d 1147, 1152 (9th Cir. 2018). Second, after the Court ruled on the County's first motion, the parties developed the factual record. Third, and finally, Cordova addressed the substance of the County's motion and has not demonstrated any prejudice. The Court concludes the County is entitled to summary judgment and GRANTS the motion. In light of this ruling, the Court DENIES the motion to dismiss as moot.

## BACKGROUND

On January 17, 2018, Plaintiff Richard Dennis Cordova ("Cordova"), acting *pro se*, filed his original complaint. On July 18, 2018, he filed a first amended complaint ("FAC"), asserting claims against Lake County Deputy Sheriff Aaron Clark ("Clark") and the County pursuant to 42

U.S.C. section 1983. Cordova filed his Second Amended Complaint on October 27, 2023, and the County moved for summary judgment on December 22, 2023.[1]

Clark arrested Cordova on January 29, 2016. At the time, Clark relied on information based on a case management system ("CMS") maintained by the County, which showed Cordova was on Post Release Community Supervision ("PRCS"). If Cordova was on PRCS, Clark could search Cordova without a warrant. *See* Cal. Pen. Code § 3453(f). However, on December 10, 2015, Cordova's probation officer, Jose Martinez, determined that Cordova should be terminated from PRCS. That information was not entered into the CMS until February 4, 2016. (Declaration of John Wellfleet, ¶ 4, Ex. C (Deposition of Rob Howe ("Howe Depo.") Vol. II at 200:21-201:1).) When Clark tried to search Cordova, an altercation ensued that gives rise to Cordova's claim for excessive force. *See Cordova v. Lake County*, No. 18-cv-367-JSW, 2020 WL 13786613, at *3-4 (N.D. Cal. June 10, 2020).

Cordova claims the County is liable for the use of excessive force based on alleged failures to adequately train and supervise the Probation Department to update the CMS about whether or not an individual is on PRCS. (*See* FAC ¶ 2 & Claim 3 at 10:25-11:15; SAC ¶¶ 29-43.) The County and the Probation Department do not have a written policy documenting how to update an individual's PRCS status.

The County submits evidence that at the end of one year "the system will automatically change the [PRCS] status from current to – to closed." (Wellfleet Decl., ¶¶ 2, 4, Ex. A (Deposition of Wendy Mondfrans ("Mondfrans Depo.") at 61:13-24); Ex. C (Howe Depo. Vol. II at 201:16-22).) If a probation officer determines an individual can be terminated from PRCS before one year, the record shows the County's general practice is to have the probation officer fill out a form documenting that decision. The officer should then give the form to the Probation Department's administrative staff. That staff should then enter the information into the CMCs as soon as "reasonably practical". (Mondfrans Depo. at 61:25-62:18; Wellfleet Decl., ¶ 3, Ex. B

---

[1] Unless otherwise noted, the facts are undisputed. The County objected to Cordova's Exhibits A, B, C, and D. The Court did not rely on those exhibits to resolve the motion and has not considered them.

2

(Howe Depo. Vol. I at 117:13-25, 121:5-14); Wellfleet Decl., Ex. C (Howe Depo. Vol. II at 202:7-22).)[2] There is no evidence about what length of time is considered "reasonably practical," and former Chief Probation Officer Rob Howe testified it could vary by case. (Declaration of Carrie Richey ("Richey Decl."), ¶ 7, Ex. D (Howe Depo. Vol. I at 124:15-19); *see also id.*, ¶ 15, Ex. L (Howe Depo. Vol. II at 199:4-204:7).) The Probation Department decided to have administrative staff update the CMS in order to free up probation officers' time to work with the individuals the officers supervised. (Wellfleet Decl., Ex. A (Mondfrans Depo. at 62:19-63:1).) Former Chief Howe testified that he "never before or after had" a claim like Cordova's. (Wellfleet Decl., Ex. C (Howe Depo. Vol. II at 212:13-15).)

Cordova submits a printout from the CMS, which indicates Martinez told Cordova that he would terminate PRCS at the six-month mark and which includes the statement "PRCS form completed … you may close this file." (Richey Decl., ¶ 9, Ex. F.) Cordova also submits the PRCS review form signed by Martinez, which does not have the "file closed" box checked. (*Id.* ¶ 10, Ex. G.) Martinez testified that he did not follow up on the request to close out the file and does not recall whether or how he provided the form to the Probation Department's administrative staff. (Richey Decl., ¶ 11, Ex. H (Deposition of Jose Martinez at 107:6-10; 109:24-112:14.) Cordova also presents testimony from other Lake County probation officers who testified that they expected administrative staff to close out cases once staff received the necessary paperwork and who acknowledged that, at times, cases were missed. (Richey Decl., ¶¶ 12-13, Ex. I (Deposition of Teddi Walker at 69:1-72:16), Ex. J (Deposition of Roberto Morfin at 48:4-49:20).)

The Court will address additional facts as necessary in the analysis.

//

//

---

[2] The County did not provide the Court with page and line citations for the portions of the depositions on which it relied, and it did not provide the oath page for any of the deposition testimony it submitted. Cordova did not object to the deposition testimony. The Court has considered it but reminds the County that it is not the Court's task to "scour the record." *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).

# ANALYSIS

## A. Applicable Legal Standard.

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court may not weigh evidence or make determinations of credibility. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c). An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248. A fact is "material" if it may affect the outcome of the case. *Id.* If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, the party must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279 (quoting *Richards*, 55 F.3d at 251); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.") "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the non-moving party must introduce some significant probative evidence tending to support the complaint." *Summers v. A. Teichert Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997)

1  (citation and internal quotation marks omitted). If the non-moving party fails to point to evidence
2  precluding summary judgment, the moving party is entitled to judgment as a matter of law.
3  *Celotex*, 477 U.S. at 323.

### B. The County Is Entitled to Judgment on the *Monell* Claims.

Cordova asserts two claims against the County. The first is based on the alleged failure to train and supervise its Probation Officers to ensure the CMS correctly reflects an individual's status on PRCS. (SAC ¶¶ 30-31.) The second alleges the County's policies and practices relating to updating the CMS were unconstitutional. (*Id.* ¶¶ 37-38.) It is well-established that a municipality cannot be held liable on a theory of *respondeat superior*. *Bd. of Cty. Comm'rs of Bryan Ct., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("*Brown*"); *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). To overcome the County's motion, Cordova must show there are genuine disputes of fact about whether the County acted with deliberate indifference and whether its policies were the "moving force" behind the violation at issue. Deliberate indifference is a "stringent standard of fault," and requires Cordova to show the County "disregarded a known or obvious consequence of [its] action." *Id.* at 410. Cordova also "must demonstrate a direct causal link between" the custom or policy and his injury. *Id.* at 404, 410; *City of Canton, Oh. v. Harris*, 489 U.S. 378, 385 (1989).

In *Brown,* the plaintiff brought *Monell* claims against Bryan County based on a decision to hire a deputy sheriff she alleged used excessive force against her. According to the plaintiff, the county sheriff failed to adequately review the deputy's background, which included misdemeanor arrests for assault and battery, among other offenses. 520 U.S. at 401. Following trial, the jury found the county liable, and the Fifth Circuit affirmed. The Supreme Court reversed. *Id.* at 402. Although in *City of Canton*, the Court left open the "possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations," the *Brown* Court emphasized that *Monell* liability would attach "*in a narrow range of circumstances*." *Id.* at 409 (emphasis added). Thus, liability may be premised on a single incident where a constitutional violation is "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Id*. at 409. For example, "a city that arms its police

1   force with firearms and deploys the armed officers into the public to capture fleeing felons without
2   training the officers in the constitutional limitation on the use of deadly force." *Connick v.*
3   *Thompson,* 563 U.S. 51, 63 (2011) (citing *City of Canton*, 489 U.S. at 390 n.10).

4       Cordova posits the County's failure to train and supervise its probation officers and its
5   clerical staff on the importance of immediately updating an individual's status on PRCS reflected
6   "a lackadaisical and careless approach to Fourth Amendment rights." (Opp. to MSJ at 18:11-12.)
7   That may be true, but Cordova cannot premise a finding of municipal liability on the possibility
8   that the County's allegedly inadequate training or supervision will result in the infliction of "any
9   constitutional injury." *Brown*, 520 U.S. at 412. Cordova "must demonstrate that a municipal
10  decision reflects deliberate indifference to the risk that a violation of a *particular* constitutional or
11  statutory right will follow the decision." *Id.*, at 411 (emphasis added); *see also Connick*, 563 U.S.
12  at 62 ("Without notice that a course of training is deficient in a *particular* respect, decisionmakers
13  can hardly be said to have deliberately chosen a training program that will cause violations of
14  constitutional rights.") (emphasis added).

15      Thus, Cordova must show the "obvious consequence" of the County's policies and
16  practices for updating the CMS was that law enforcement officers relying on incorrect information
17  would use excessive force during the course of and after an arrest. *Cf. Connick,* 563 U.S. at 62-63
18  (concluding plaintiff could not prevail on a failure to train claim based on a single *Brady* violation
19  where none of the previous *Brady* violations presented at trial was "similar to the violation at
20  issue"). When the Court ruled on the County's first motion for summary judgment, it noted there
21  was "no evidence of a policy or practice in the County that was the moving force behind the use of
22  force against" Cordova. *Cordova*, 2020 WL 13786613, at *5. It also concluded that absent
23  "evidence of any policies or procedures for how it maintained the" CMS or evidence that "it
24  updated it more frequently … a fact-finder could reasonably presume that the delay in updating
25  [Cordova's] status in the [CMS] was the County's ordinary practice for how infrequently such
26  updates were entered." *Id.*

27      The Court now has the benefit of a more developed record, and it must "carefully test the
28  link" between the policies and practices and the particular injury alleged" against that record.

*Brown*, 520 U.S. at 410.  Cordova has submitted evidence from which a jury could conclude that the County did not promptly update the system.  (*See, e.g.,* Walker Depo. at 69:1-70:17.)  He has not, however, provided any other instances where the failure to update the system led to the use of excessive force.  In the absence of such evidence, the Court concludes that no reasonable jury could find that the County was deliberately indifferent to Cordova's right to be free from excessive force or that the Probation Department's custom and practices were the moving force behind the alleged violation of that right.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the County's motion for summary judgment and denies the motion to dismiss as moot.  The Court also CONTINUES the case management conference set for May 10, 2024 to May 31, 2024.  The parties shall file an updated case management conference statement by May 24, 2024, which also addresses whether any further ADR efforts prior to trial would be fruitful.

**IT IS SO ORDERED**.

Dated: April 8, 2024

_____
JEFFREY S. WHITE
United States District Judge